## A00A1026. CAVIN et al. v. BROWN.
(538 SE2d 802)

MILLER, Judge.

The issue on appeal is whether evidence supported an award for general and punitive damages and for OCGA § 9-15-14 attorney fees based on showings that (1) one defendant fraudulently conveyed property to the other defendant, and (2) both defendants pursued a defense that their own testimony contradicted. Holding that the evidence sustained the awards, we affirm.

When Carlton Hicks and Margaret Brown divorced in 1985, the court ordered Hicks to pay weekly child support payments of $70 plus half of any uninsured medical expenses of the two children. Within weeks the court held Hicks in contempt for refusing to pay as ordered. After a few years of compliance, Hicks then refused to pay for nine years, resulting in a second finding of wilful contempt in March 1998. The court found that he was in arrears in the amount of $19,339.60 and held that he could purge himself of contempt by paying $50 per week in addition to his ongoing child support obligations. This order, which expressly disclaimed affecting any previous order except as specifically set out therein, did not purport to modify the divorce decree or its child support obligations.

Hicks generally made the payments required to purge himself of contempt, resulting in an outstanding amount in arrears of $17,745.60 as of November 5, 1998. In the three weeks prior to November 5, Brown repeatedly demanded that Hicks pay an additional $9,796.90, representing his half of certain medical bills for a child, which demands he ignored. On November 5, Hicks transferred his only substantial asset — certain real property that he had purchased and then improved at a cumulative cost exceeding $30,000 — to his girlfriend Patricia Cavin. His remaining assets were worth approximately $225.

Brown sued Hicks and Cavin to set aside the transaction as a fraudulent conveyance and for general and punitive damages. Hicks and Cavin, responding pro se, defended on the ground that the transfer was for valuable consideration. Both defendants maintained that Cavin had loaned Hicks thousands of dollars in exchange for promissory notes, which money Hicks had deposited in his bank account and then used to purchase and improve the land. They asserted that in exchange for the land transfer to Cavin on November 5, she forgave the notes. Defendants obdurately maintained this position, even though (1) Hicks's bank account statements contradicted the story, (2) the alleged notes could not be produced,[1] (3) both defendants had

---

[1] Hicks did produce minuscule and illegible scraps of paper at trial, which he claimed were the remnants of the notes after he had torn them up to spite Brown for having asked

certified to tax authorities that the November 5 transfer was a "Deed of Gift," and (4) Hicks previously testified that the transfer was without present consideration and was testamentary in anticipation of Hicks's demise.

Following a bench trial, the court found by clear and convincing evidence that the transfer was a voluntary gift that rendered Hicks insolvent and was a fraudulent conveyance designed to hinder and delay payment of the debts owed to Brown. The court set aside the deed and awarded Brown general damages ($10,000) and punitive damages ($20,000), with the damage awards against Hicks only. Pursuant to Brown's post-trial motion, the court awarded $10,000 in attorney fees against Hicks under OCGA § 9-15-14 (a), reasoning that Hicks's defense that he transferred the property for valuable consideration completely lacked any justiciable issue of law or fact and could not possibly be believed. On appeal, Hicks and Cavin argue that no evidence supported the court's judgment or its award of attorney fees.

1. The evidence sustained the court's finding that the November 5 transfer was fraudulent under OCGA § 18-2-22 (3). Under that Code section, "[e]very voluntary deed or conveyance, not for a valuable consideration, made by a debtor who is insolvent at the time of the conveyance," is conclusively presumed fraudulent and is void as to creditors holding demands against the debtor at the time of the conveyance.[2] Thus, "a creditor seeking to set aside a conveyance need only show the indebtedness, the insolvency of the debtor, and that the deed was voluntary."[3]

(a) *Indebtedness.* On the date of conveyance, Hicks owed Brown $17,745.60 in child support arrears as well as additional monies for a child's medical payments. This establishes the indebtedness. By statute Brown is considered a creditor, and Hicks a debtor, for purposes of attacking the November 5 transaction as a fraudulent conveyance.[4]

Hicks and Cavin argue that the debt owed Brown was not reduced to a judgment and thus did not qualify her as a creditor. Not only is a judgment unnecessary under OCGA § 19-6-35 (b) which expressly provides that child support obligees are creditors, but under OCGA § 18-2-22 all that is needed is a claim, not a judgment.[5]

Defendants then argue that the entire debt was not owed on

---

that they be produced. Such spoliation of material evidence raised a presumption against the spoliator that the evidence would have been harmful or that the claim against him was well founded. OCGA § 24-4-22; *Greer v. Andrew,* 138 Ga. 663, 664 (3) (75 SE 1050) (1912).

[2] *Barclay v. First Nat. Bank of Polk County,* 265 Ga. 744 (462 SE2d 374) (1995).

[3] (Citations and punctuation omitted.) Id. at 744.

[4] OCGA § 19-6-35 (b).

[5] *Rolleston v. Cherry,* 237 Ga. App. 733, 735 (1) (a) (521 SE2d 1) (1999).

November 5 because Hicks was current on his payments under the March 1998 contempt order, which order allowed Hicks to pay $50 per week on the amount in arrears to purge himself of contempt. This argument is nonsensical. Just because the court afforded Hicks the opportunity to purge himself of contempt by making weekly payments on the past due amount did not in any way mean that the debt was not due and owing. Simply providing Hicks an avenue to stay out of jail, the court did not purport to modify the arrearage amount or the child support obligations, nor could it have. In a contempt proceeding a court has no authority to modify the terms of a divorce decree.[6] Moreover, in collecting on child support payments, an obligee may simultaneously pursue contempt, execution by writ of fi. fa., garnishment, and other remedies.[7] Whether one may purge a contempt finding by paying incrementally has nothing to do with whether the entire amount of money is owed and collectible in other proceedings.

Finally, defendants argue that since Hicks paid off the arrearage amount shortly before the trial on the fraudulent conveyance, no fraud can be shown. Defendants misapprehend the date for determining what debt is owed to the creditor for purposes of adjudicating an alleged fraudulent conveyance. It is not the date of trial, but the date of the conveyance.[8] Hicks's belated paying off of the past due debt some eight months later on the eve of trial was no reason for the court to discontinue the fraudulent conveyance trial.

(b) *Insolvency.* The test for determining whether a debtor is insolvent under OCGA § 18-2-22 (3) is "whether the value of his remaining property is sufficient to pay in full all of his debts."[9] The value of that property is determined as of the date of the questioned conveyance.[10] Here the evidence showed that on November 5 Hicks owed over $17,000 to Brown but retained assets amounting to only $225. Insolvency was shown.

(c) *Voluntary.* Under OCGA § 18-2-22 (3), a voluntary conveyance is one without present consideration.[11] Here evidence showed that the November 5 transfer was a testamentary "Deed of Gift" without present consideration.

Because evidence showed the three criteria of OCGA § 18-2-22 (3), the court did not err in concluding that the transfer was a fraudu-

---

[6] *Boyett v. Wester*, 265 Ga. 387-388 (456 SE2d 504) (1995).

[7] *Hill v. Hill*, 219 Ga. App. 247, 248 (464 SE2d 656) (1995).

[8] Cf. *Goodman v. Lewis*, 247 Ga. 605, 606, fn. 1 (277 SE2d 908) (1981) (in determining insolvency, the value of the debtor's remaining property is determined as of the date of the conveyance sought to be set aside).

[9] (Citation omitted.) Id.

[10] Id.

[11] *Barclay*, supra, 265 Ga. at 744-745.

lent conveyance.[12]

2. Hicks contends that the court was not authorized to award general and punitive damages. This argument is without merit.

(a) *General Damages. Kesler v. Veal*[13] held that in addition to setting aside the transaction, a court may award general and punitive damages upon proof of a fraudulent conveyance.[14] Because general damages are those which the law presumes to flow from any tortious act, they may be recovered without proof of any specific amount.[15] General damages awarded on a fraud claim may cover a broader range of damages than those awarded on contract claims.[16] Here Brown showed that her credit had been damaged through her inability to collect on the outstanding debt. This resulted in her having to pay interest rates of 300 percent to pay off the medical bills. The court was authorized to award general damages of $10,000 against Hicks on the fraudulent conveyance.

(b) *Punitive Damages.* Although punitive damages are available in fraudulent conveyance actions,[17] the plaintiff must prove "by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care" raising a presumption of conscious indifference to consequences.[18] Here the evidence showed several badges of fraud, including Hicks's secreting away some $40,000 in cash years earlier to prevent Brown from collecting, the transfer of nearly all Hicks's assets when he was financially embarrassed and keenly aware of his debts to Brown, Hicks's fabricated evidence and inconsistent testimony regarding the promissory notes (and his destruction of the alleged notes despite a subpoena for them), and Hicks's possessing the property after allegedly conveying it away.[19] Combined with the other evidence referenced above, this evidence supported the punitive damages award.

3. Under OCGA § 9-15-14 (a), the trial court shall award attorney fees and expenses of litigation to a plaintiff against whom a defendant has asserted a defense with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that the court would accept the

---

[12] Id.

[13] 182 Ga. App. 444, 446-451 (3) (356 SE2d 254), rev'd in part on other grounds, 257 Ga. 677, 679 (362 SE2d 214) (1987).

[14] See *Lawson v. Athens Auto Supply &c.*, 200 Ga. App. 609, 611 (2) (409 SE2d 60) (1991).

[15] OCGA § 51-12-2 (a); *Harden v. Vertex Assoc.*, 226 Ga. App. 322, 324, fn. 2 (487 SE2d 12) (1997); see *Kesler*, supra, 182 Ga. App. at 447 (3).

[16] *Harden*, supra, 226 Ga. App. at 324-325 (2) (c).

[17] *Kesler*, supra, 182 Ga. App. at 451 (3).

[18] OCGA § 51-12-5.1 (b).

[19] See *Varn Investment Co. v. Bankers Trust Co.*, 165 Ga. 694, 696 (141 SE 900) (1928).

asserted defense. Here Hicks asserted in his answer and throughout trial that he conveyed the property in exchange for the forgiveness of the notes owed to Cavin. Yet at other points in the trial he admitted that no consideration or value was given for the property. And in reporting the transfer to the tax authorities, he certified that it was a "Deed of Gift." Despite a subpoena for the alleged promissory notes, Hicks destroyed them by tearing them up into small, illegible pieces.

Brown was forced to disprove the bogus defense through testimony and through obtaining and introducing numerous documents, including Hicks's bank statements, settlement documents showing the source of Hicks's purchase money for the land, tax documents, etc. Evidence supported the court's finding that this defense could not possibly be believed, thus justifying the attorney fees award.

4. Brown has moved this Court to impose a frivolous appeal penalty under Court of Appeals Rule 15 (b). "When the law is indisputably clear concerning the issues raised on appeal, frivolous appeal penalties may be imposed."[20] Based on the undisputed authorities, no argument raised by Hicks on appeal has any colorable merit, and thus we grant Brown's motion for a penalty. We assess a penalty for frivolous appeal against Hicks in the amount of $1,000 pursuant to Court of Appeals Rule 15 (b). The trial court is directed to enter judgment for a $1,000 penalty against Hicks and in favor of Brown upon return of the remittitur.[21]

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED AUGUST 30, 2000 —
RECONSIDERATION DENIED SEPTEMBER 19, 2000 —

*Joseph E. Willard, Jr.*, for appellants.
*Renzo S. Wiggins*, for appellee.

---

[20] (Citation omitted.) *Hightower v. Kendall Co.*, 225 Ga. App. 71, 73 (5) (483 SE2d 294) (1997).

[21] See id. at 73-74 (5).